777 So.2d 941 (2000)
THE FLORIDA BAR, Complainant,
v.
John A. BARLEY, Respondent.
Nos. SC95168, SC95921, SC96029, SC96097 and SC96539.
Supreme Court of Florida.
August 24, 2000.
Rehearing Denied February 20, 2001.
*942 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Donald M. Spangler, Bar Counsel, Tallahassee, Florida, for Complainant.
John A. Barley, Tallahassee, Florida, Respondent, pro se.
PER CURIAM.
These five consolidated Florida Bar cases all involve attorney John A. Barley.[1] We have jurisdiction. See art. V, § 15, Fla. Const. For ease of discussion, we first address the main case at issue here (case number SC95168), followed by a discussion of the four remaining ancillary cases (case numbers SC95921, SC96029, SC96097, and SC96539).

I. THE MAIN CASE
The question in the main case (case number SC95168) is whether the mere filing of a motion for dissolution of an emergency suspension stays the emergency suspension itself under Rule Regulating the Florida Bar 3-5.2(e)(1). We hold that it does not.

FACTS
This Court placed Barley on emergency suspension on April 9, 1999, based on the Bar's allegations of trust fund violations. See Florida Bar v. Barley, 731 So.2d 650 (Fla.1999) (table). According to Barley, at a meeting on April 13, 1999, Bar counsel initially advised him and his counsel that this Court's emergency suspension would be stayed by operation of law if he filed a motion for dissolution of the emergency suspension under rule 3-5.2(e)(1). Rule 3-5.2(e)(1) provides:
The attorney may move at any time for dissolution or amendment of an emergency order [of probation or suspension] by motion filed with the Supreme Court of Florida, a copy of which will be served on bar counsel. Such motion shall operate as a stay of any other proceedings and applicable time limitations in the case and, unless the motion fails to state good cause or is procedurally barred as an invalid successive motion, shall immediately be assigned to a referee designated by the chief justice.
Barley filed such a dissolution motion with this Court on April 19, 1999, and the motion was, pursuant to the rule and the practice of this Court, immediately assigned to a referee. However, at about that same time, in a letter to Barley's counsel dated May 13, 1999, Bar counsel made clear that Barley's filing of a dissolution motion "[did] not abate the operation of the [emergency] suspension order" and that Barley was therefore required to comply with the emergency suspension order within thirty days.[2]
*943 On May 28, 1999, Barley filed in this Court an emergency motion for stay of suspension and clarification, outlining the above facts and requesting relief. This Court ordered the Bar to file a response. Prior to receipt of the Bar's response, the referee issued his report on June 15, 1999, recommending that this Court grant Barley's April 19 motion to dissolve the emergency suspension. On review of that report, we rejected the referee's recommendation in an order dated January 26, 2000, which provided as follows:
Upon consideration, this Court disapproves the report of the referee filed June 15, 1999[, recommending that this Court dissolve its April 9 emergency suspension order]. This Court's April 9, 1999, order suspending Respondent on an emergency basis accordingly remains in full force and effect. Respondent's emergency motion for stay of suspension/clarification, filed May 28, 1999, remains under consideration, and will be addressed separately by subsequent action of this Court.
The present opinion is the "subsequent action of this Court" contemplated in the above-quoted order.

ANALYSIS
In his emergency motion for stay of suspension and clarification, Barley asks this Court to stay his emergency suspension until this Court's final disposition on his motion to dissolve the emergency suspension. Significantly, there has been a final disposition on the motion to dissolve the emergency suspension. As indicated above, this Court's January 26, 2000, order disapproved the referee's report recommending that this Court grant Barley's motion to dissolve the emergency suspension and stressed that the emergency suspension remains in full force and effect. To clarify any ambiguity in this regard, by subsequent order dated March 3, 2000, we granted the Bar's "Motion for Clarification of [This Court's] Order Dated January 26, 2000" to make clear that our January 26 order was a final disposition denying Barley's dissolution motion and continuing his emergency suspension uninterrupted since its commencement on April 9, 1999.[3] Therefore, we dismiss as moot the portion of Barley's present motion requesting a stay of his suspension.
As to the clarification portion of Barley's present emergency motion for stay of suspension and clarification, Barley urges that the confusion in his case regarding whether the filing of a motion to dissolve an emergency suspension under rule 3-5.2(e) operates to stay the emergency suspension itself "is capable of being repeated, has statewide significance, and merits a published opinion by the Court." We agree and grant clarification to the extent set forth in this opinion.
Rule 3-5.2(e)(1) provides in pertinent part that the filing of a motion for dissolution of an emergency order of probation or suspension "shall operate as a stay of any other proceedings and applicable time limitations in the case." (Emphasis added.) Barley urges that this language applies to the emergency suspension itself, but a plain reading of the language dictates otherwise. An emergency suspension order is neither a "proceeding" nor an "applicable time limitation" as those terms *944 are commonly understood and therefore plainly falls outside the scope of the rule. This straightforward interpretation is buttressed by this Court's opinion adopting the language at issue:
[T]he ... rule specifies that The Bar must file a formal complaint within sixty days of the emergency order and proceed to trial, whether or not it appears that a motion for dissolution later may be filed in some stage of the proceedings. However, this time limitation is suspended if, prior to the filing of the formal complaint, the attorney in question exercises the right to move for dissolution of the order. If a complaint already has been filed, the motion operates as a stay of any further proceedings and suspends the time limitations imposed on The Bar.
Successive motions for dissolution will summarily be dismissed by the Court without being referred to a referee to the extent that they raise issues that were or with due diligence could have been raised in a prior motion. In such instances, the motion operates as a stay only until dismissed, thus extending any applicable time limitations for an amount of time equal to the duration of the stay.
Once a valid motion for dissolution is filed that states good cause, the chief justice will appoint a referee to hear the motion, and the hearing must occur within the time limits specified. The Court then will review the referee's findings and recommendation.
Florida Bar re Amendments to Rules Regulating The Florida Bar, 593 So.2d 1035, 1037 (Fla.1991). In short, the opinion is silent as to staying the emergency suspension itself; rather all references in the opinion to stays and suspensions of time relate to the filing of the Bar's complaint and proceedings thereunder.
Furthermore, the opinion's directive that "the hearing [on a dissolution motion] must occur within the time limits specified" refers to Rule Regulating The Florida Bar 3-5.2(e)(2), which provides in pertinent part that "[t]he referee shall hear such motion within 7 days of assignment, or a shorter time if practicable, and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing, or a shorter time if practicable." This expedited handling of dissolution motions is clearly intended to benefit the attorney under emergency suspension (i.e., if the emergency suspension is to be dissolved, then it should be dissolved as quickly as possible in order to minimize interference with the lawyer's practice). Rhetorically speaking, what would be the rush if the filing of the dissolution motion itself served to stay the emergency suspension?
Finally, for purposes of the requested clarification, we stress that it has never been this Court's policy to automatically stay an emergency suspension simply because the respondent filed a motion to dissolve the emergency suspension. Rather, the emergency suspension remains in full force and effect unless and until this Court dissolves it upon review of the expedited referee's report. Thus, when this Court in its January 26, 2000, order disapproved the referee's report recommending that Barley's emergency suspension be dissolved, we specified that "[t]his Court's April 9, 1999, order suspending Respondent on an emergency basis accordingly remains in full force and effect." In other words, the emergency suspension order had never not been in full force and effect; Barley's filing of a dissolution motion did not stay the emergency suspension under rule 3-5.2(e)(1).

II. THE FOUR ANCILLARY CASES
In addition to the main case discussed above (case number SC95168), there are four related ancillary cases involving Barley that we discuss below in sets of two under the subheadings "Orders to Show Cause" and "Subpoena."

ORDERS TO SHOW CAUSE
While the referee's report and Barley's motion for stay were pending in this *945 Court in the main case discussed above, the Bar in two ancillary cases (case numbers SC95921 and SC96539) filed petitions for orders to show cause why Barley should not be held in contempt or disbarred for violating or failing to comply with this Court's April 9, 1999, emergency suspension order. These two petitions alleged that, in contravention of the emergency suspension order, Barley continued to represent clients, failed to advise clients of his suspension, and failed to provide Bar counsel with copies of notifications to financial institutions or advise Bar counsel of the receipt and location of all sums received from the practice of law.
In his responses, Barley not only denied many of the allegations but also suggested that any failure to comply with the emergency suspension order was unintentional and excusable under the unique facts of his case which, according to Barley, included the ambiguity of rule 3-5.2(e) and the Bar's vacillating interpretation of same. We disagree.
Barley's reading of rule 3-5.2(e) and his claims that any noncompliance with the suspension order was unintentional and excusable are strained given the plain language of the rule, this Court's opinion adopting the rule, and the implications inherent in having an expedited handling of dissolution motions (all discussed at length above), as well as the Bar's almost immediate insistence that Barley's filing of his dissolution motion did not stay his emergency suspension under the rule.[4] We therefore reject Barley's suggestion that we excuse him for failing to comply with the emergency suspension order.
However, insofar as Barley has denied many of Bar's allegations underlying its petitions for orders to show cause, factual findings are required. As such, and by operation of this opinion and a corresponding unpublished order, we hereby assign these two cases to a referee for resolution. Should the appointed referee ultimately find that Barley failed to comply with the emergency suspension order, we direct that the referee may consider in possible mitigation any perceived ambiguity surrounding rule 3-5.2(e) and Barley's asserted reliance thereon.

SUBPOENA
In both ancillary cases discussed above, the Bar referenced Barley's alleged misconduct in his handling of an estate in which he was acting as both attorney and personal representative (one of the heirs had filed a complaint with the Bar). In a third ancillary case (case number SC96029), the Bar subpoenaed Barley's file and accounting records pertaining to the estate; however, Barley did not comply with the subpoena, and the Bar filed a petition for order to show cause why Barley should not be held in contempt and sanctioned for failing to do so.
In response, Barley in the fourth and final ancillary case at issue here (case number SC96097) filed a "motion to quash subpoena, for protective order, and for sanctions," arguing that the subpoena lacked proper notice and particularity, was excessive in scope, was prematurely issued, and subjected him to undue burden and hardship. Barley adopted this motion into his response to the Bar's show cause petition, adding that the underlying complaint involved his performance as a personal representative, not as an attorney, and was therefore more appropriate for a probate court, not a disciplinary proceeding.
*946 The Bar countered in its reply that Barley's dual capacity did not shield him from Bar discipline and again urged that Barley be held in contempt for not complying with the subpoena. In response to Barley's motion to quash the subpoena, the Bar countered that the subpoena was properly issued and limited in scope and purpose and again urged this Court to find Barley in contempt. We decline to hold Barley in contempt but otherwise agree with the Bar's arguments.
The subpoena at issue is grounded on a complaint filed by one of the heirs to the estate in question, and contrary to Barley's contentions, we find that the subpoena is not lacking in particularity, excessive in scope, or unduly burdensome. Rather, in essentially standard language, the subpoena simply commands Barley to produce his "original file or files pertaining to the administration of the Estate ... together with all original records [comprehensively lists all such possible records] ... of the Estate ... for the period of time beginning with the inception of said matter and continuing up to and including the date of service of the subpoena." See generally R. Regulating Fla. Bar 3-7.11(d) (authorizing the issuance of subpoenas for, among other things, "the production of documentary evidence" in disciplinary investigations and proceedings). We likewise reject Barley's arguments that the subpoena was prematurely issued and lacked proper notice.
Barley's suggestion that his acts as a personal representative did not involve the practice of law and are therefore not subject to Bar discipline is plainly wrong. This Court has rejected similar arguments as "simply untenable," holding that
[c]onduct while not acting as an attorney can subject one to disciplinary proceedings. The Florida Bar v. Hefty, 213 So.2d 422 (Fla.1968). As this Court has stated before, "`an attorney is an attorney is an attorney.'"The Florida Bar v. Bennett, 276 So.2d 481, 482 (Fla.1973). Even in personal transactions and when not acting as an attorney, attorneys must "avoid tarnishing the professional image or damaging the public." Id.; The Florida Bar v. Hooper, 507 So.2d 1078 (Fla.1987); State ex rel. The Florida Bar v. Clements, 131 So.2d 198 (Fla. 1961).... The practice of law is a privilege which carries with it responsibilities as well as rights. That an attorney might, as it were, wear different hats at different times does not mean that professional ethics can be "checked at the door" or that unethical or unprofessional conduct by a member of the legal profession can be tolerated.
Florida Bar v. Della-Donna, 583 So.2d 307, 310 (Fla.1989); see also R. Regulating Fla. Bar 3-4.3 ("The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, ... may constitute a cause for discipline.") (emphasis added). Clearly, Barley may be disciplined as an attorney if he is found to have engaged in misconduct as a personal representative. See, e.g., Florida Bar v. Fine, 607 So.2d 416, 417 (Fla.1992) (disciplining attorney for his misconduct as a personal representative "despite the fact that he was acting as a personal representative and not attorney for the estate").
Accordingly, we deny all relief requested in Barley's motion to quash the subpoena in case number SC96097 and command Barley to immediately comply with the subpoena. Affording Barley a generous benefit of the doubt, we decline at the present time to hold him in contempt under the Bar's petition for order to show cause in case number SC96029. However, in both of these cases and all others discussed in this opinion, we find Barley's conduct to border on defiance, recalcitrance, and obstructionism.

III. CONCLUSION
In main case number SC95168, we dismiss as moot the stay portion of Barley's emergency motion for stay and clarification, but grant the clarification portion of that motion as set forth above. We hold *947 that the mere filing of a motion for dissolution of an emergency suspension does not stay the emergency suspension itself under rule 3-5.2(e)(1).[5] Thus, Barley's emergency suspension has been continuously in effect since it was ordered by this Court on April 9, 1999, and has at no time been stayed, delayed, interrupted, suspended, or otherwise abated or lifted. To the extent that Barley has not already fully complied with the emergency suspension order, we command that he immediately do so or face sanctions from this Court.
In ancillary case numbers SC95921 and SC96539 (the related order to show cause cases), we reject Barley's contention that, due to the asserted confusion surrounding rule 3-5.2(e), he should be excused for any noncompliance with the emergency suspension order. Instead, because findings of fact are required on the Bar's underlying allegations, we hereby assign these two cases to a referee for resolution. If the referee ultimately finds that Barley failed to comply with the emergency suspension order, the referee may consider in possible mitigation any perceived ambiguity surrounding the rule and Barley's asserted reliance thereon.
Finally, in ancillary case numbers SC96029 and SC96097 (the related subpoena cases), we deny all relief requested in Barley's motion to quash the subpoena and command him to immediately comply with same or face sanctions by this Court. We decline to hold Barley in contempt at this time but will not hesitate to impose such a sanction should he fail to comply with other orders of this Court.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur. WELLS, C.J., recused.
NOTES
[1] Case numbers SC95168, SC95921, SC96029, and SC96539 were all consolidated by order of this Court dated October 15, 1999. In addition to these four cases, we hereby sua sponte consolidate case number SC96097, bringing to five the total number of consolidated cases addressed in this opinion involving respondent Barley.
[2] Bar counsel disputes Barley's assertion that he initially advised Barley and his counsel that this Court's emergency suspension would be stayed by operation of law if he filed a motion for dissolution of the emergency suspension under rule 3-5.2(e)(1). Specifically, in the Bar's response to Barley's emergency motion for stay of suspension and clarification, Bar counsel explained:

While it is true that Bar counsel pointed [Barley's] counsel to the stay provision of the rule, Bar counsel was extremely careful to caution [Barley's] counsel that [Barley's] counsel was every bit as capable and qualified to interpret that provision as was Bar counsel, who had never encountered that provision of the rule in his relatively short tenure with The Bar up to that point.... Thus, contrary to [Barley's assertion], no opinion was expressed by Bar counsel upon which [Barley's] counsel could have or should have relied.... Bar counsel repeatedly cautioned [Barley's] counsel not to rely upon what ultimately was determined to be an erroneous interpretation.
[3] Thus, we further specified in our March 3, 2000, order that the Bar had sixty days from January 26, 2000, to file a formal complaint against Barley. See R. Regulating Fla. Bar 3-5.2(e)(4). The Bar in turn filed a formal complaint against Barley on March 17, 2000, in case number SC00-579.
[4] Even assuming that, as urged by Barley, Bar counsel at an April 13, 1999, meeting initially advised Barley and his counsel that this Court's emergency suspension would be stayed by operation of law if he filed a dissolution motion under rule 3-5.2(e)(1), it is undisputed that in a letter to Barley's counsel dated May 13, 1999, Bar counsel made it clear that a dissolution motion "does not abate the operation of the [emergency] suspension order" and that Barley was therefore required to comply with the emergency suspension order within thirty days. The Bar has not wavered from that position.
[5] We direct the Bar to propose an amendment to incorporate this holding into the language of rule 3-5.2(e)(1) in order to avoid any misinterpretation or confusion whatsoever on this issue in the future.