831 So.2d 163 (2002)
THE FLORIDA BAR, Complainant,
v.
John A. BARLEY, Respondent.
No. SC00-579.
Supreme Court of Florida.
October 24, 2002.
Rehearing Denied January 22, 2003.
*164 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Edward Iturralde, Bar Counsel, The Florida Bar, Tallahassee, FL, for Complainant.
John A. Barley, pro se, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that attorney John A. Barley be suspended from the practice of law for three years for multiple ethical violations. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the referee's findings of fact and recommendations as to guilt with the exception of the excessive fee violation. We also disapprove the referee's recommended discipline and disbar Barley.

FACTUAL AND PROCEDURAL BACKGROUND
On March 24, 1999, The Florida Bar filed a petition for emergency suspension of Barley in this Court based on the Bar's allegations of trust fund violations in connection with Barley's representation of Warren Emo. On April 9, 1999, this Court placed Barley on emergency suspension. See Florida Bar v. Barley, 731 So.2d 650 (Fla.1999) (table).[1]
The Bar then filed a formal complaint against Barley in the instant case alleging *165 that he violated multiple Rules Regulating the Florida Bar while representing Mr. Emo and his company in potential litigation with Slab Construction (Slab). The referee held a hearing and issued a report making the following factual findings.
Mr. Emo gave Barley $76,760.68 for deposit into Barley's trust account for the specific purpose of funding a settlement according to the terms of an October 29, 1997, letter from Barley addressed to Slab's attorney. The next day the proposed settlement was not reached as originally anticipated.
Barley insisted that the $76,760.68 remain in the trust account to ensure that Slab's attorney would refrain from prosecuting his third-party complaint. Mr. Emo paid seven billing statements to Barley for legal services prior to the initial deposit into the trust account, and as of October 30, 1997, Barley had been paid $50,571.14 in fees and costs during a three-month period, and was paid an additional $11,947.33 on November 21, 1997, for a total of $62,518.74.
Barley made the first $500 withdrawal from the trust funds on November 5, 1997, less than a week after Mr. Emo had been persuaded to leave the money in the trust account. Barley then began making systematic withdrawals of the funds over the ensuing three and a half months. The dates and amounts of these withdrawals had no correlation to the dates or hours being invoiced by Barley to Mr. Emo.
On December 23, 1997, when Mr. Emo asked for the return of the trust funds, Barley informed him for the first time that the funds had been overdrawn. When Mr. Emo inquired as to how much was left, Barley informed Mr. Emo that the overdraft approximated $23,000, but that Barley was expecting a large settlement soon and would make good on the shortage. On January 26, 1998, Mr. Emo wrote the first of five written demands for the return of funds. He followed up by faxing the same letter to Barley on February 27, 1998, and wrote again on March 3, 1998, on September 9, 1998, and on September 14, 1998. Barley did not return the balance to Mr. Emo; instead, he continued to withdraw the remaining trust funds until the entire $76,760.68 had been withdrawn by February 13, 1998.
The referee found the fact that the October 30, 1997, settlement was never reached did not change the character or nature of the trust funds. The referee also found the evidence supported a determination that Mr. Emo consistently demanded, in written form, the return of the funds and never authorized their use as an advance toward attorney's fees.
The referee found that Barley's sole item of written corroboration, an office memo written by his bookkeeper purporting to memorialize instructions from Mr. Emo authorizing the use of the funds, dated November 5, 1997, the date upon which Barley made the first withdrawal of funds, was never copied or sent to Mr. Emo. The referee noted that the bookkeeper was never called to testify as to the legitimacy of Mr. Emo's authorization. Moreover, despite Barley's testimony to the effect that upon receipt of each of the written demands for return of the funds he telephoned Mr. Emo and received verbal assurance that he could use the funds, Barley provided no documentary evidence memorializing said conversations.
Additionally, the referee found that Barley continually manipulated Mr. Emo into allowing the funds to remain in Barley's custody so that he might avail himself of the use of the funds in a manner contrary to the purpose for which they were deposited. The referee found this inference was supported by the fact that Barley began to *166 withdraw on the funds less than one week after convincing Mr. Emo to leave the money in the trust account.
The referee further found that the $76,078.68 deposit in the trust account was not made as an advance toward unearned fees, nor was there any logical basis for concern on Barley's part that legitimate fees earned in the future would not be timely paid. The referee also found there was no basis for any belief that Barley feared the nonpayment of billing statements so as to justify his requirement that Mr. Emo leave such a disproportionate sum of money in his trust account. In support of this finding the referee noted that Mr. Emo had paid Barley a total of $62,518.74 in legal fees by November 21, 1997. Finally, the referee found that Mr. Emo paid Barley's billing statements promptly and without protest, not because the fees were reasonable and had been earned, but rather because of a sense of being "held hostage" by the circumstances of litigation and negotiations in which his firm had become embroiled.
Having made these findings, the referee recommended that Barley be found guilty of violating Rules Regulating the Florida Bar 4-1.5(a) (charging or collecting illegal, prohibited, or clearly excessive fees); 4-1.15(a) (failing to hold client and third party funds in trust); 4-1.15(b) (failing to account for or deliver trust funds to client); 4-1.15(d) (failing to comply with trust accounting rules); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(a) (failing to account for money or property entrusted to attorney); 5-1.2(b) (failing to comply with minimum trust accounting records).
As to discipline, the referee recommended that Barley be suspended for three years, effective, nunc pro tunc, April 9, 1999 (the effective date of Barley's emergency suspension), to be followed by two years of probation during which Barley must repay costs to the Bar in the amount of $4,140.53. The referee also recommended that Barley be required to attend and successfully complete the Law Office Management Assistance Service program and the Florida Bar's Trust Account Course during the probation period.
In recommending discipline, the referee noted that Barley is sixty years old and was admitted to the Bar on June 20, 1969. The referee found several aggravating factors, including a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and prior discipline.[2]
The referee also found several mitigating factors, including Barley's good reputation and positive character, the delay in the disciplinary proceedings resulting from the operation of the rule regulating the Florida Bar concerning emergency suspension, that the emergency suspension constituted imposition of other penalties and sanctions, Barley's remorse, and the remoteness of the prior discipline.
Barley filed a petition for review challenging the referee's findings of fact, recommendations of guilt, the aggravating *167 factors found, the recommended discipline, and recommendation that costs be imposed.[3] The Bar filed a cross-petition challenging the referee's recommended discipline. While this case was pending, the Bar notified this Court that Barley had entered a plea of nolo contendere to one count of grand theft in connection with his representation of Mr. Emo.[4]

RULES VIOLATIONS
Barley first challenges the referee's factual findings and the referee's conclusion that Barley improperly used trust funds deposited for the specific purpose of a settlement for other uses over a period of several months and failed to return the trust funds when Mr. Emo asked for their return.
Barley claims the referee ignored a number of inconsistencies in Mr. Emo's testimony. He maintains that there is no competent evidence that Mr. Emo deposited anything in Barley's trust account, or that the "character and nature of those funds" did not change after a proposed settlement between Mr. Emo's company and Slab fell through. Barley also argues that there was no competent evidence that Mr. Emo ever demanded in written form the return of the funds, nor was there sufficient evidence that Mr. Emo did not authorize use of the funds as an advance toward unearned attorney's fees.
According to Barley, the referee's finding that there was an absence of documentation on Barley's part was erroneous because Barley was never requested at the hearing to produce documents relating to his phone conversations with Mr. Emo. Barley argues there was no evidence on record to find that he manipulated Mr. Emo into allowing the $76,760.68 to remain in his custody. Finally, Barley claims the referee's finding that Mr. Emo's account was never credited for the $76,760.68 was erroneous, because Barley provided documentation demonstrating that Mr. Emo's account had been credited.
This Court has stated that a referee's findings of fact are presumed correct and will not be overturned unless they are "clearly erroneous or lacking in evidentiary support." See Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla.1991); see also Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998) (stating that where findings of fact are adequately supported, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee"). We conclude that the referee's findings are supported by competent, substantial evidence. The main source of this evidence is Mr. Emo's testimony. This Court has noted that the "referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Florida Bar v. Carricarte, 733 So.2d 975, *168 978 (Fla.1999) (quoting Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991)). Our review of the record in this case indicates that the referee was in the best position to evaluate Mr. Emo's credibility, and even though Barley challenges Mr. Emo's veracity, we find no basis in the record to reject the referee's reliance on his testimony. Moreover, Barley failed to present any evidence in the record that is contrary to Mr. Emo's testimony.
Further, in making these findings the referee relied on testimony from other witnesses as well as documentary evidence. The Bar introduced into evidence numerous exhibits, including a copy of the $76,760.68 check that Mr. Emo gave Barley for deposit into Barley's trust account. Mr. Emo's written demands to Barley requesting the return of the trust funds were also introduced into evidence. Lastly, Barley's billing statements showing that Mr. Emo was never credited for the trust account deposit were also introduced at the final hearing.
The Bar's auditor conducted an audit on Barley's trust account and testified that the account had a shortage of $76,760.68 attributable to Barley's unauthorized use of funds deposited for a specific purpose. The auditor testified that the money went into the account on October 31, 1997, and Barley began making withdrawals on close to a daily basis beginning November 5, 1997. Finally, the auditor testified that his analysis showed Barley had used all the monies in the trust fund by February 13, 1998. The auditor ultimately concluded that Barley violated multiple trust accounting rules.
In light of the foregoing, we find there is competent, substantial evidence in the record to support the referee's findings of fact and ultimate conclusion that Barley improperly used trust funds that had been specifically deposited for purposes of a settlement for other uses over a period of several months and failed to return the trust funds when Mr. Emo asked for their return.
Next, Barley challenges the referee's recommendation of guilt as to Rules Regulating the Florida Bar 4-1.5(a) (charging or collecting illegal, prohibited, or clearly excessive fees) and 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). Barley argues that the original fee agreement between Barley and Mr. Emo authorized him to bill at $225 per hour, which was the rate Barley consistently billed Mr. Emo. Barley also argues that Mr. Emo never questioned or objected to any of the billing statements. Additionally, Barley claims the Bar failed to present any evidence that brought into question the legality or permissibility of Barley's fees. Thus, Barley claims the referee's recommendation of guilt as to Rules Regulating the Florida Bar 4-1.5(a) and 4-8.4(c) is not supported by the referee's findings of fact.
Rule 4-1.5(a) states in pertinent part, "An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee...." In the instant case, Mr. Emo paid Barley a total of $62,518.74 in legal fees from August 1997 to November 1997. Mr. Emo testified that he consistently paid Barley's billings, not from a belief that the fees were reasonable and had been earned, but rather out of a sense of his being held hostage by the circumstances of litigation and negotiations in which his business was involved. Mr. Emo retained the services of Barley when his first attorney had to withdraw due to a conflict of interest. The first attorney's fees had totaled $10,000 for six months of representation. After realizing Barley's fees would greatly exceed his previous experience (he paid Barley $50,000 over three months of representation), *169 Emo said he felt he had no choice but to continue because he could not afford a third attorney, and he felt the end was in sight. The total amount of money in dispute between Mr. Emo's company and Slab Construction was $108,000, and Mr. Emo testified that he would not have hired Barley had he known the total amount of legal fees was going to exceed $76,000. Lastly, Mr. Emo testified that he felt the bills were excessive, but he continued to pay them because Barley had the trust funds and would not return them.
Under rule 4-1.5(b) there are numerous factors that can be considered in determining what constitutes a reasonable fee, including the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skills requisite to perform the legal services properly. See Florida Bar v. Carlon, 820 So.2d 891 (Fla.2002) (approving a referee's recommendation that Carlon charged a clearly excessive fee where the Bar presented expert testimony that Carlon's charging a client $3,340.10 for extracting names from Martindale-Hubbell constituted sheer overreaching). In the instant case, the Bar presented no expert testimony or any evidence, other than Mr. Emo's testimony, challenging the legality or the reasonableness of the fees Barley charged. Moreover, the record shows that Barley consistently provided Mr. Emo with billing statements which detailed the work Barley did and the hourly rate he was charging. As Barley argued, Mr. Emo consistently paid these statements without challenging the reasonableness of the fees. Although we find Mr. Emo's testimony reliable, in and of itself, his testimony does not constitute competent, substantial evidence that Barley's fees were clearly excessive. Thus, we reject the referee's recommendation that Barley be found guilty of violating rule 4-1.5(a).
Rule 4-8.4(c) provides that "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." This Court has held that "`[i]n order to find that an attorney acted with dishonesty, misrepresentation, deceit, or fraud, the Bar must show the necessary element of intent.'" Florida Bar v. Fredericks, 731 So.2d 1249, 1252 (Fla.1999) (quoting Florida Bar v. Lanford, 691 So.2d 480, 481 (Fla.1997)). The element of intent is proven by establishing that the conduct was deliberate or knowing. Id.
In the instant case, Barley insisted that the $76,760.68 remain in the trust account to ensure that Slab's attorney would abstain from prosecuting his third-party complaint. Barley used this technique to continually manipulate Mr. Emo into allowing the funds to remain in his custody. When Mr. Emo first asked Barley to return the trust funds, Barley told him that Slab's attorney would not allow him to do so. Mr. Emo testified that Barley told him that Slab's attorney would advise them to file suit against Mr. Emo's company if he withdrew the trust funds because it would be a sign of bad faith. Mr. Emo also testified that Barley finally stated to him that his bookkeeper had accidentally used the trust funds and he would replace them after his firm received a large settlement.
The Bar's auditor testified that Barley began withdrawing the trust funds on November 5, 1997, less than one week after Barley convinced Mr. Emo to leave the money in the trust account. During his testimony, Barley never rebutted this testimony, but rather adhered to the story that he was authorized to use the funds as advances. However, Barley provided no written evidence that Mr. Emo authorized him to use the trust funds as an advance on fees. These facts support the referee's conclusion that Barley's conduct was deliberate *170 and knowing. Therefore, we conclude that the record supports the referee's findings that Barley was engaged in conduct involving dishonesty or deceit by manipulating Mr. Emo into leaving the trust funds in Barley's control, failing to return the funds to Mr. Emo when Mr. Emo requested such, and by providing different reasons to Mr. Emo as to why he did not have or could not return the funds. We therefore approve the referee's recommendation that Barley be found guilty of violating rule 4-8.4(c). Accordingly, of the seven charged rule violations, we approve all but one of the referee's recommendations of guilt on these rules.[5]

DISCIPLINE
Barley next argues that the referee erred in finding a "pattern of misconduct" and "multiple offenses" as aggravating factors because there is no evidence to support these findings. This Court has held that a referee's finding as to the existence of a particular aggravator is considered a factual determination and is therefore presumed correct and will be upheld unless clearly erroneous or lacking in evidentiary support. Florida Bar v. Wolis, 783 So.2d 1057, 1059 (Fla.2001).
The referee found that Barley's misconduct in the instant case was similar to the conduct leading to his sixty-day suspension in 1989. See Florida Bar v. Barley, 541 So.2d 606 (Fla.1989). As in the instant case, Barley's 1989 case involved Barley making unauthorized withdrawals from a trust account. Additionally, in the instant case, Barley consistently withdrew Mr. Emo's trust funds from October 1997 until February 1998 without authorization. We conclude that every time Barley withdrew funds from Mr. Emo's trust account he was committing another offense. Therefore, the referee's findings of a "pattern of misconduct" and "multiple offenses" as aggravating factors are supported by competent, substantial evidence in the record and we approve those findings.
Next, Barley challenges the referee's recommended discipline of a three-year suspension. Barley claims that the recommended three-year suspension is not supported by the evidence and that he has already been punished severely by the imposition of this Court's emergency suspension order. Thus, he argues that he should not be further disciplined.
The Bar cross-petitions, claiming the referee's recommended three-year suspension does not comport with prior decisions of this Court. The Bar argues that although some mitigation was established, such mitigation was insufficient to overcome the presumption of disbarment for misuse of client funds. Accordingly, the Bar argues Barley should be disbarred.
Generally, this Court will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). However, this Court has the sole responsibility to determine the discipline to be imposed and need not accept a referee's recommendation. See Florida Bar v. Vernell, 721 So.2d 705, 709 (Fla.1998).
Although Barley argues that the three-year suspension is too harsh and that no further discipline should be imposed, we agree with the Bar that the applicable case law supports disbarment. We have repeatedly held that the misuse of client funds held in trust is one of the most *171 serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate punishment. See Florida Bar v. Travis, 765 So.2d 689, 691 (Fla.2000) (citing Florida Bar v. Tillman, 682 So.2d 542 (Fla.1996)); Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991). The overwhelming majority of cases involving the misuse of client funds have resulted in disbarment despite the presence of mitigation. Id.at 1383.
In determining whether disbarment is the appropriate punishment in a case involving misappropriation, the focus must be on the circumstances of the misappropriation. Travis, 765 So.2d at 691. The presumption of disbarment is exceptionally weighty when the attorney's misuse is intentional rather than a result of neglect or inadvertence. Id. (citing Tillman, 682 So.2d at 543); Florida Bar v. McIver, 606 So.2d 1159 (Fla.1992); Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990). As noted above, the referee's findings in this case support a conclusion that Barley's actions were intentional.
In cases involving isolated incidents of misappropriation, this Court has found that the presumption of disbarment can be rebutted when there is mitigation such as cooperation, restitution, and the absence of a past disciplinary record. See Florida Bar v. Thomas, 698 So.2d 530 (Fla.1997). In this case, although the referee found the presence of some mitigating factors, we conclude that they do not overcome the presumption of disbarment in light of Barley's prior disciplinary record for similar conduct, the present aggravating factors, and the multiple rule violations in this case.
Finally, Barley challenges the referee's recommendation that the Bar be awarded all of its costs. Barley claims the evidence does not support taxation of costs in favor of the Bar. Barley also argues that the Bar improperly imposed costs for "attorney travel" for a June 12, 2000, hearing in Perry, Florida, when in fact the proper venue for the hearing was in Leon County, Florida.
Rule Regulating the Florida Bar 3-7.6(o)(2) expressly states that the referee "shall have discretion to award costs and, absent an abuse of discretion, the referee's award shall not be reversed." The rule further provides, "When the bar is successful, in whole or in part, the referee may assess the bar's costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated." Rule Regulating Fla. Bar 3-7.6(o)(3). In this case, all but one of the seven rule violations have been approved by this Court. Therefore, we approve the referee's recommendation that costs be imposed. However, since the Bar conceded that venue for the June 12, 2000, hearing was in Leon County and not Perry, Florida, we have subtracted the $41.80 the Bar charged for attorney travel from the total costs awarded.

CONCLUSION
Accordingly, John A. Barley is hereby disbarred from the practice of law in the State of Florida, effective, nunc pro tunc, April 9, 1999. In this Court's April 9, 1999, order suspending Barley, this Court afforded Barley thirty days to close out his practice and protect the interests of existing clients, and further ordered that Barley not accept any new business from the date the order was issued. Accordingly, we conclude that Barley need not be afforded thirty days to close out his practice. Barley shall accept no business until he is readmitted to the practice of law in Florida. Barley may petition the Florida Board of Bar Examiners for readmission five years from the date of suspension. *172 Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from John A. Barley in the amount of $4,098.73, for which sum let execution issue.
It is so ordered.
SHAW, PARIENTE, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., concurs in result only.
WELLS, J., recused.
NOTES
[1] Barley challenged the emergency suspension by filing a motion for dissolution of the emergency suspension, which we denied. This Court held, among other issues, that the mere filing of a dissolution motion does not stay an emergency suspension and Barley's failure to comply with the emergency suspension was not excusable due to his asserted confusion regarding the rule. See Florida Bar v. Barley, 777 So.2d 941 (Fla.2000).
[2] In Florida Bar v. Barley, 541 So.2d 606 (Fla.1989), this Court found that Barley engaged in multiple acts of misconduct including failing to advise a client to seek independent counsel to enforce provisions of a divorce settlement agreement against the client's deceased former husband's estate when Barley was also the trustee of the trust for settlement proceeds, charging both an hourly fee and a contingent fee, withdrawing fees directly from the trust fund, and persuading the client to loan money from the trust fund and subsequently drafting and backdating notes with terms different from those agreed to so as to evidence the loan. We concluded that Barley's misconduct warranted a sixty-day suspension.
[3] Barley also challenged the constitutionality of Rule Regulating the Florida Bar 3-5.2 governing emergency suspensions. We have considered Barley's challenge and find that Barley waived this claim by not raising it when his emergency suspension was at issue before this Court in Florida Bar v. Barley, 777 So.2d 941 (Fla.2000).
[4] On May 16, 2002, The Florida Bar filed a "Notice of Determination of Guilt" in Florida Bar v. Barley, No. SC02-1063 (Fla. Sept. 27, 2002). The filing notified this Court that on April 5, 2002, the Second Judicial Circuit Court, in and for Leon County, entered an order in case number XXXX-XXXX against Barley withholding an adjudication of guilt. The circuit court found that Barley entered a plea of nolo contendere to one count of grand theft in an amount greater than $20,000, a second-degree felony, and imposed ten years' probation while ordering Barley to pay $55,000 in restitution to Mr. Emo.
[5] Barley does not challenge the referee's other recommendations as to guilt, and we find Barley violated rule 4-1.15(a), rule 4-15(b), rule 4-15(d), rule 5-1.1(a), and rule 5-1.2(b).