765 So.2d 689 (2000)
THE FLORIDA BAR, Complainant,
v.
Robert L. TRAVIS, Jr., Respondent.
No. SC93559.
Supreme Court of Florida.
January 27, 2000.
Rehearing Denied August 17, 2000.
John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, April Dawn Douglas, Bar Counsel and Donald M. Spangler, Co-Bar Counsel, Tallahassee, Florida, for Complainant.
Richard A. Greenberg, Tallahassee, Florida, for Respondent.
PER CURIAM.
We have for review the referee's report regarding ethical breaches committed by Robert L. Travis, Jr. The referee recommends that Travis be suspended for ninety days for misappropriating trust fund accounts. The Florida Bar has petitioned for review, seeking disbarment. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed, we disbar Travis.

BACKGROUND
Pursuant to a request from the Second Judicial Circuit Grievance Committee, Travis's trust account was audited by The Florida Bar for the period of January 1, 1996, through December 31, 1997. Travis's trust account showed various shortages during that period, with a shortage of $22,209.47 as of December 31, 1997. Travis admitted that if his trust account were audited for 1998, his account probably would be short by an additional $1,500. The audit revealed that payments in the *690 amount of $35,850, which were not authorized by clients, were made to Travis during the years 1996 and 1997. Based on the audit, the Bar filed a complaint against Travis, alleging several violations of the Rules Regulating The Florida Bar. Travis filed an answer admitting the Bar's charges. The referee entered a summary judgment as to Travis's guilt, and a disciplinary hearing was held.
At the hearing, the evidence showed that Travis had shared a trust account with a colleague who owed Travis money for utilities and other monies borrowed from Travis. In anticipation of receiving payment from the colleague, Travis wrote himself checks out of his trust account. One check was written to Travis's daughter for a trip to Costa Rica. Shortages in Travis's trust account were from funds held by Travis for the payment of his clients' creditors or monies remaining after Travis successfully obtained reductions from these creditors on behalf of his clients.
Travis testified that in 1995 he won a Lexus and $5,000 in Biloxi, Mississippi, as well as $17,000 in the Fantasy Five, a Florida Lottery game. Travis sold the Lexus for $30,000. Travis admitted earning approximately $150,000 in 1995, including his winnings, and used a portion of that money to purchase a new home. Travis's new home was worth $210,000 and placed into his wife's name with a $50,000 mortgage. Travis did not pay back his trust account, had not made any substantial effort for arrangements to pay back the trust account at the time of the final disciplinary hearing, and had not told his clients that any money was owed to them.
Many witnesses, including three circuit court judges and several attorneys, testified in support of Travis's character and fitness to practice law. Other witnesses testified as to Travis's contribution to the legal profession and to his community during his twenty-eight-year legal career. Travis's psychiatrist testified that Travis was suffering from depression during the period covered by the audit.

REFEREE'S FINDINGS AND RECOMMENDATIONS
The referee found that money entrusted to Travis for a specific purpose was not properly held in trust and applied only to that purpose, in violation of rule 5-1.1. The referee also found that Travis failed to maintain the minimum trust accounting records required by rule 5-1.2(b) and failed to follow minimum trust accounting procedures in violation of rule 5-1.2(c).
The referee recommended that Travis receive a ninety-day suspension followed by three years' probation. The referee also recommended Travis pay costs of $2,794.58, pay restitution, participate in LOMAS, complete the trust account course offered by the Bar, and continue mental health counseling and medication as directed by Travis's doctor.
In making his recommendation, the referee found factors in aggravation as follows: (1) due to his substantial experience in the practice of law, Travis knew that using his trust account for personal matters was wrong; (2) he exposed clients to substantial risk; (3) he has not yet made restitution; and (4) he had made a payment from his trust account to his daughter for a trip to Costa Rica. In mitigation, the referee found: (1) Travis had no prior disciplinary record; (2) he had experienced personal or emotional problems; (3) he cooperated during the proceedings; (4) he provided twenty-eight years of exceptional service to the profession of law and the community; and (5) he served indigent clients for many years and established legal services for the poor.

ANALYSIS
Due to Travis's admission of the charges against him, the sole issue before this Court is whether the referee's recommended ninety-day suspension is an appropriate discipline for Travis's conduct. As previously stated, the Bar seeks disbarment. *691 While a referee's recommendation for discipline is persuasive, it is ultimately this Court's task to determine the appropriate sanction. See Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994).
We have repeatedly held that the misuse of client funds held in trust is one of the most serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate punishment. See Florida Bar v. Tillman, 682 So.2d 542 (Fla.1996); Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991). While this Court has held in isolated cases that this presumption can be rebutted by mitigating evidence, see id. at 1383, we find the mitigation in this case insufficient to reduce the presumed discipline.
The overwhelming majority of cases involving the misuse of client funds have resulted in disbarment regardless of the mitigation present. See Shanzer, 572 So.2d at 1383, and cases cited therein. In determining whether disbarment is the appropriate punishment in a case involving the misappropriation of trust account funds, we emphasize that our focus is upon the circumstances of the misappropriation. The presumption of disbarment is exceptionally weighty when the attorney's misuse is intentional rather than a result of neglect or inadvertence. See Tillman, 682 So.2d at 543; Florida Bar v. McIver, 606 So.2d 1159 (Fla.1992); Florida Bar v. Shuminer, 567 So.2d 430 (Fla.1990).
In cases involving isolated incidents of misappropriation, this Court has found the presumption of disbarment rebutted when mitigation such as cooperation, restitution, and the absence of a past disciplinary record exist. See Florida Bar v. Thomas, 698 So.2d 530 (Fla.1997). Although these factors are necessary, they do not, in and of themselves, serve to overcome the presumption of disbarment. In this case, Travis did cooperate with the Bar and has no past disciplinary record. Travis did not make restitution when he apparently could have, but has now begun restitution.
In this case, we also recognize the substantial evidence of Travis's contribution to the community and his otherwise exemplary record. Though we commend the past good works that Travis has performed, we expressly hold as we did in Florida Bar v. Aaron, 606 So.2d 623 (Fla. 1992), that such good works do not overcome Travis's pattern of conduct in which he intentionally misappropriated client funds for his own use. We again expressly state for the benefit of the members of the Bar that stealing from a client, which is what the taking of trust account funds plainly is, cannot be overcome merely because the attorney has committed prior good works and has no prior disciplinary history. See Florida Bar v. Smiley, 622 So.2d 465 (Fla.1993); Aaron, 606 So.2d at 624. An attorney does not perform such good works so that they can be used as a credit against such severe misconduct. The public has a right to have confidence that all lawyers who are members of The Florida Bar are deserving of their trust in every transaction.
Travis cites Florida Bar v. Mitchell, 645 So.2d 414 (Fla.1994), and Florida Bar v. Cramer, 643 So.2d 1069 (Fla.1994), in support of the referee's recommended ninety-day suspension. These cases are distinguishable from the instant case. In Mitchell, the attorney's trust account violations were technical in nature, unlike Travis's substantial misappropriation of funds for his personal use. Mitchell, 645 So.2d at 416. In Cramer, the attorney used his trust account to conceal personal funds from the Internal Revenue Service, and in the single instance of misappropriating a client's funds, the money was replaced and the client was unharmed. Cramer, 643 So.2d at 1071. In this case, Travis did not make restitution and, rather than a single incident, Travis engaged in a pattern of misusing clients' funds over a substantial period of time.
*692 Accordingly, we disbar Robert L. Travis, Jr., for a period of five years, nunc pro tunc to the effective date of his suspension. Travis may petition the Florida Board of Bar Examiners for readmission five years from the date of his suspension. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Robert L. Travis, Jr., in the amount of $2,794.58, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.