775 So.2d 944 (2000)
THE FLORIDA BAR, Complainant,
v.
Elena C. TAULER, Respondent.
No. SC94239.
Supreme Court of Florida.
November 22, 2000.
*945 John F. Harkness, Jr., Executive Director, and John Anthony Berry, Staff Counsel, Tallahassee, Florida; and Cynthia Ann Lindbloom, Bar Counsel, Miami, Florida, for Complainant.
Scott W. Sakin, Miami, Florida, for Respondent.
PER CURIAM.
The Florida Bar has petitioned for review of the referee's report in this case involving attorney discipline. We have jurisdiction under article V, section 15, Florida Constitution, and for the reasons expressed, we approve the referee's report and recommended discipline.

FACTS
The Bar filed a complaint against Tauler alleging misappropriation of client funds and multiple resultant violations of the Rules Regulating The Florida Bar. Ultimately, Tauler and the Bar stipulated to extensive facts, the essence of which are as follows. During June, July, and October of 1996, Tauler issued $56,628.45 in checks to herself from her trust account. These client funds were used to satisfy Tauler's personal and business obligations, which were unrelated to the clients for whom the funds were being held. Tauler replaced and disbursed $35,522.54 to one client in early December 1996, and replaced and disbursed the remaining funds to two other clients in late January and early February 1997.
Based on the above facts, the referee found Tauler guilty of violating rule 4-1.15(a) (client's funds to be held in trust); rule 4-1.15(b) (prompt notice and delivery of client funds); and rule 5-1.1(a) (money entrusted to attorney), and hearings were held on the subject of discipline only. The referee found in aggravation that Tauler's conduct exhibited a selfish motive and constituted multiple offenses. See Fla. Stds. Imposing Law. Sancs. 9.22(b), (d). In mitigation, the referee found personal and emotional problems, positive character and reputation, timely and good faith restitution, full and free disclosure, and remorse. See Fla. Stds. Imposing Law. Sancs. 9.31(c)-(e), (g)-(h). As to discipline, the referee recommended a three-year suspension commencing on December 9, 1998,[1] to *946 be followed by one year of probation if Tauler was reinstated. The referee recommended the conditions of such probation include: trust account monitoring with $100 monthly cost of supervision, an initial LOMAS (Law Office Management Assistance Service) review, and negotiation or payment of an outstanding Medicaid lien in connection with matters pertaining to one client. The Bar contends that the referee improperly found the mitigating factor of good faith and timely restitution, and that disbarment is the appropriate sanction.

RESTITUTION
The Bar argues that the referee improperly found the mitigating factor of good faith and timely restitution because Tauler did not return the misappropriated funds to two clients until after a substantial delay, the restitution was compelled by the Bar's investigation, and Tauler returned the bulk of the misappropriated funds directly to her client instead of satisfying an outstanding Medicaid lien. The Bar contends that these actions are inconsistent with good faith and timely restitution.
A referee's finding as to the existence of a particular mitigator is considered a factual determination and is "presumed correct and will be upheld unless clearly erroneous or lacking in evidentiary support." See Florida Bar v. Hecker, 475 So.2d 1240, 1242 (Fla.1985). The standards provide that a "timely good faith effort to make restitution or to rectify consequences of misconduct" is a factor which may be considered in mitigation. See Fla. Stds. Imposing Law. Sancs. 9.32(d).
Although the dates of restitution to Tauler's clients in the stipulated facts confirms the Bar's allegations of some delay and that Tauler did not make immediate restitution until after the Bar commenced its investigation, Tauler's testimony supports the referee's finding. Tauler testified that the knowledge of the arrearage was a "daily struggle," and that she replaced the funds at the earliest possible opportunity by refinancing her family's home. The evidence also indicates that Tauler made a good faith effort to comply with both her client's demand for the funds and the Medicaid lien. Prior to distributing these funds to the client, Tauler and the client executed a release and indemnity agreement in which the client agreed to be responsible for the Medicaid lien and to maintain the funds in a separate account until the disputed amount of the lien was resolved. The factor involving early restitution distinguishes this case from those in which the debt remained outstanding even as the matter was reviewed by this Court.
In reviewing a referee's factual determinations, our role is not to reweigh the evidence and substitute our view of the credibility of the witnesses for that of the referee. See Florida Bar v. Lecznar, 690 So.2d 1284, 1287 (Fla.1997); Florida Bar v. Bustamante, 662 So.2d 687, 689 (Fla. 1995). We approve the referee's finding of good faith and timely restitution because of the competent substantial evidence to support the finding.

DISCIPLINE
The Bar also contests the referee's recommended discipline, arguing that the presumption of disbarment for misappropriation of client funds has not been rebutted. Although a referee's findings of fact are given deference, the scope of review of recommended discipline is broader because this Court has the ultimate responsibility to determine the appropriate sanction. See Florida Bar v. Niles, 644 So.2d 504 (Fla.1994). However, this Court has recognized that the referee "occupies a favored vantage point for assessing key considerations-such as a respondent's degree of culpability and his or her cooperation, forthrightness, remorse, and rehabilitation (or potential for rehabilitation)," and therefore the Court "will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in *947 existing caselaw." Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997).
In support of its argument for disbarment, the Bar relies heavily on Florida Bar v. Shuminer, 567 So.2d 430 (Fla. 1990), and Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991), arguing that these cases involved virtually identical aggravating and mitigating factors as present here, and disbarment was found to be the appropriate discipline. We find both cases distinguishable. In Shuminer, the attorney entered an unconditional guilty plea to various misappropriation violations. The referee found mitigating factors of personal and emotional problems from drug and alcohol addiction, timely and good faith effort at restitution, cooperation, inexperience, remorse, mental impairment due to addiction, successful attempts at treatment, and good character and reputation. Nevertheless, we disbarred Shuminer, because Shuminer "failed to establish that his addiction rose to a sufficient level of impairment to outweigh the seriousness of his offenses," and used a significant portion of the funds "not to support or conceal his addictions, but rather to purchase a luxury automobile." Shuminer, 567 So.2d at 432.
Likewise, in Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991), we approved the referee's recommendation of disbarment for misappropriation. Although the attorney argued that emotional problems, full cooperation, remorse, rehabilitation, and payment of restitution warranted less severe discipline, we held that such problems "are visited upon a great number of lawyers," and are not an excuse "for dipping into his trust funds as a means of solving personal problems." Shanzer, 572 So.2d at 1384. We recognized in Shanzer that "mental problems as well as alcohol and drug problems may impair judgment so as to diminish culpability," but that the referee in Shanzer's case did not abuse his discretion in rejecting this defense for Shanzer.
In contrast to the situation in Shanzer, the referee in the instant case found that Tauler was less culpable because of personal and emotional distress. The referee found that at the time of Tauler's misappropriations, Tauler's husband had recently lost his own surgery practice due to a back injury and had filed for bankruptcy, and that the family home was being lost:
The testimony of [Tauler's] husband, Dr. Tomas (no longer practicing surgical oncology), was very disturbing. It was patently obvious that he was the prime mover in the wrongdoings committed by [Tauler]. Dr. Tomas was an overbearing husband who had surgeries on his own back and had recently lost his own surgical practice. This coincided with his own bankruptcy, screaming and yelling at [Tauler], throwing objects against the wall at [Tauler] and his brow-beating of [Tauler] at a time when they were losing their home. ([Tauler] is the mother of five children, three of them with Dr. Tomas.)
The referee's finding of diminished culpability due to the circumstances surrounding Tauler's misconduct sufficiently distinguishes this case from Shuminer and Shanzer.
We have also carefully considered our recent decisions in Florida Bar v. Travis, 765 So.2d 689 (Fla.2000), and Florida Bar v. Korones, 752 So.2d 586 (Fla.2000), in which we disbarred misappropriating attorneys and reemphasized that misappropriation of trust proceeds is one of the most serious offenses an attorney can commit. Although Tauler's misuse of client funds is clearly unacceptable, the circumstances of her misappropriations vary greatly from those in Travis and Korones. In contrast to Tauler's three instances of misappropriations over five months, Travis and Korones involved substantial and continuous misappropriations over a period of time. See Travis, 765 So.2d 689 (shortages in trust account and unauthorized charges against client funds over the course of two years); Korones, 752 So.2d *948 at 587 (misappropriations from uncle's estate over three years and misrepresentations related to the thefts for next several years). Even in misappropriation cases, this Court has made distinctions between isolated instances of misconduct and continuing patterns of misconduct. See Florida Bar v. Thomas, 698 So.2d 530 (Fla. 1997) (imposing ninety-day suspension where attorney misappropriated funds and took an excessive fee but had no prior disciplinary record and misconduct was isolated incident); Florida Bar v. Corces, 639 So.2d 604 (Fla.1994) (suspending attorney for two years for using client funds to pay personal bills, where misappropriation was an isolated incident and attorney had fully repaid debt in twenty months without client complaint or loss). Tauler's isolated instances of misconduct are distinguishable from the continuous and substantial misappropriations in Travis and Korones.
Additionally, the referee found that Tauler's misappropriations were the result of severe financial hardship brought on by her husband's health problems and bankruptcy. There was no such similar financial or emotional duress in Travis and Korones. Travis used some of the misappropriated funds to finance a trip to Costa Rica for his daughter, and failed to make restitution when he was financially able to do so, despite having an income of $150,000 that year and recently purchasing a $210,000 home. Likewise, we specifically noted Korones' avarice in misappropriating over $120,000 from his uncle's estate for his own personal use where the evidence of personal and emotional problems was financial stress "due to the expenses of educating three children in private schools and colleges." 752 So.2d at 588. We find the financial duress of possibly losing one's home and the emotional duress of one's spouse going through physical and financial problems sufficiently distinguishes this case from Travis and Korones. See also Florida Bar v. Greenfield, 517 So.2d 16 (Fla.1987) (suspending attorney for one year for misappropriating estate funds where he "was in danger of losing his home through an Internal Revenue Service lien foreclosure," and "suffered from a serious illness at the time of the I.R.S. dispute").
A referee's recommended discipline will be upheld if there is a reasonable basis in existing caselaw for the recommended discipline. The referee in this case determined that Tauler was amenable to rehabilitation because of the circumstances of her misconduct as well as several additional mitigating factors. The referee specifically noted Tauler's positive character and reputation in the community, "including the overwhelming evidence of [Tauler's] legal services to others." The referee also recognized Tauler's service to a local community group which assists indigents and recent immigrants, and found, based on the testimony of the director of the group, that Tauler "acted essentially as the staff attorney, dedicating hundreds of hours assisting poor people who otherwise would have received little or no legal help. [Tauler] assisted hundreds of (primarily) women on a pro-bono basis." The referee found that Tauler had taken responsibility for her actions, and voluntarily stopped practicing law in March 1998 because she knew there would be repercussions for her conduct and did not want to jeopardize new clients.
Based on these factors and the circumstances surrounding the misappropriation, the referee concluded that Tauler was amenable to rehabilitation, and therefore a suspension was appropriate. The referee found that "under the facts and circumstances of this case, suspension protects the public from unethical conduct, and, at the same time, does not deny the public the services of an otherwise qualified and compassionate lawyer." We find that the referee's determination that suspending Tauler is sufficient to both punish the offense and still encourage rehabilitation has support in existing caselaw. See Florida Bar v. Kassier, 711 So.2d 515, 517 (Fla. 1998) ("[T]he extreme sanction of disbarment *949 is to be imposed only `in those rare cases where rehabilitation is highly improbable'."); Florida Bar v. Schiller, 537 So.2d 992 (Fla.1989) (misusing client funds warranted three year suspension where clients were not injured and attorney was "genuinely remorseful" and a good candidate for rehabilitation); Florida Bar v. Hartman, 519 So.2d 606, 608 (Fla.1988)(although attorney misused client funds during a period of "emotional instability ... due in part to drug and alcohol addiction," attorney "made steady progress" towards rehabilitation by seeking addiction counselling and assisting others with their addictions).

CONCLUSION
Although we are troubled by and condemn the conduct, competent substantial evidence supports the conclusion of the referee that Tauler should be given the opportunity to rehabilitate herself, a determination that we will not override under these circumstances. We emphasize that in approving the referee's recommended discipline of a three-year suspension, we in no way condone Tauler's actions. Trust funds are never to be used as a means for solving personal problems, and without the unique mitigating circumstances presented in the instant case and Tauler's clear commitment to providing legal assistance to those in need, we would not hesitate to disbar Tauler. While we do not countenance Tauler's actions, proportionality requires that Tauler be held less culpable, and we therefore approve the referee's recommended discipline of a three-year suspension followed by probation for one year if Tauler is reinstated.
We approve the conditions of probation recommended by the referee except the recommendation that Tauler "negotiate/pay the Medicaid lien not to exceed $35,000." Although this Court has required the payment of restitution to injured clients in the past, see, e.g., Florida Bar v. Morrison, 669 So.2d 1040 (Fla. 1996), and the payment of restitution is specifically authorized by the rules, see R. Regulating Fla. Bar 3-5.1(i), this condition does not constitute restitution, as Tauler returned the funds to the client, proper documents were executed, and there was no evidence presented that Tauler should be responsible for this lien. We therefore disapprove this condition.
Elena C. Tauler is hereby suspended from the practice of law for three years, effective December 9, 1998, the date recommended by the referee.[2] If Tauler is able to establish rehabilitation and is reinstated, she shall be required to complete a one-year period of probation which will include trust account monitoring with $100.00 monthly cost of supervision and an initial LOMAS review. Judgment for costs in the amount of $3,426.38 is entered against Tauler and in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for which sum let execution issue.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
WELLS, C.J., dissents with an opinion, in which QUINCE, J., concurs.
WELLS, C.J., dissenting.
I do not join in the majority because I do not find that the presumption of disbarment has been overcome in this case in which respondent intentionally took funds from her trust account for personal use. I do not find that this case can be distinguished from our recent decisions in Florida Bar v. Korones, 752 So.2d 586 (Fla. 2000), and Florida Bar v. Travis, 765 So.2d 689 (Fla.2000). I conclude that what we said in Travis should control:
The overwhelming majority of cases involving the misuse of client funds have *950 resulted in disbarment regardless of the mitigation present. See [Florida Bar v. Shanzer, 572 So.2d 1382 (Fla.1991)], and cases cited therein. In determining whether disbarment is the appropriate punishment in a case involving the misappropriation of trust account funds, we emphasize that our focus is upon the circumstances of the misappropriation. The presumption of disbarment is exceptionally weighty when the attorney's misuse is intentional rather than a result of neglect or inadvertence. See [Florida Bar v. Tillman, 682 So.2d 542 (Fla. 1996)]; Florida Bar v. McIver, 606 So.2d 1159 (Fla.1992); Florida Bar v. Shuminer, 567 So.2d 430 (Fla.1990).
Id. at 691.
I do not diminish the heavy stress and pressure which respondent's personal crisis had upon her and her family. However, lawyers must know and the public must have confidence that lawyers know that funds held by lawyers in trust are as unavailable for personal use as funds which are in a bank in another person's name. Intentionally taking that money for whatever purpose is stealing, for which the consequence is certain-no longer having the privilege of being a member of The Florida Bar.
I recognize that such absolutes are often tested by factual circumstances which make this imposition harsh. However, public trust and confidence in lawyers, which is a necessary foundation for public trust and confidence in the judicial system, can stand on nothing less. There simply has to be public assurance that funds entrusted to lawyers will not be stolen by the lawyer, and if that public assurance is breached by a lawyer, that lawyer will no longer be a Florida lawyer.
I must enforce this belief by stating I would disbar the respondent.
QUINCE, J., concurs.
NOTES
[1] Although the referee found that Tauler voluntarily stopped practicing law in March 1998, the referee recommended that the effective date of the suspension be the date of Tauler's admission of misconduct, December 9, 1998.
[2] According to the referee's findings, Tauler stopped practicing law on this date. If this date is in error, the parties shall immediately notify this Court and we will modify the effective date of the suspension accordingly.