863 So.2d 303 (2003)
THE FLORIDA BAR, Complainant,
v.
Mark W. McFALL, Respondent.
No. SC02-1350.
Supreme Court of Florida.
November 26, 2003.
*304 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida; and Stephen Christopher Whalen, Assistant Staff Counsel, Tampa, FL, for the Florida Bar, Complainant.
Mark W. McFall, pro se, Piney Flats, TN, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Mark W. McFall. We have jurisdiction. See art. V, § 15, Fla. Const.
Pursuant to the Bar's Petition for Emergency Suspension, this Court suspended McFall on April 26, 2002. Thereafter, the Bar filed a disciplinary complaint against McFall alleging that he violated numerous Rules Regulating the Florida Bar by misappropriating and mishandling funds.

FACTS
McFall and the Bar entered into a "Joint Stipulation of Facts," in which they also stipulated to rule violations. The parties agreed that McFall misappropriated escrow funds. After a hearing, the referee issued a report incorporating the stipulation, in which she made the following findings and recommendations.
In July 1999, McFall agreed to serve as an escrow agent pursuant to an escrow agreement with Amtel (Amtel) and Commercial Electrical Systems (Commercial). McFall received $181,750 on behalf of Amtel, *305 which he deposited in an escrow account.
In May 2001, Commercial issued its final work invoice for $3,093.75. At that time, the escrow account had $6,287.39 remaining.[1] Around September 19, 2001, McFall issued a check from the account for $3,093.75 payable to Commercial for Commercial's final invoice. This left a balance of $3,193.64 in the account, which was Amtel's property. On September 24, 2001, McFall sent a letter to Suwalee Thangsumphant, the President of Amtel, in which he requested an additional fee of $1000. Around September 24, without the knowledge or authorization of Amtel, McFall issued a check from the escrow account for $1000 made payable to himself. He used the funds to satisfy personal expenses. On September 25, Thangsumphant sent a letter to McFall objecting to his request and demanding that he forward the entire escrow balance to Amtel.[2]
On September 28, McFall sent another letter to Thangsumphant making a "final request" for payment of an additional $1000 fee. Around October 3, without the knowledge or authorization of Amtel, McFall issued a second check from the account for $1000, which he made payable to himself. He used these funds to satisfy personal expenses. This left a balance of $1,226.14[3] in the trust account. On October 8, Thangsumphant, on behalf of Amtel, submitted an inquiry/complaint to the Bar stating that McFall refused to disburse the balance of the escrow funds to Amtel. On October 31, the Bar sent a letter of inquiry to McFall.
Around November 5, without the knowledge or authorization of Amtel, McFall issued a third check from the trust account for $1000, which he made payable to himself. He also used these funds to satisfy personal expenses. This left a balance of $226.14 in the account. On November 13, McFall deposited $2000 to replace some of the escrow funds that he had removed, thereby creating an account balance of $2,226.14.
On November 15, McFall provided the Bar with his response to Thangsumphant's inquiry/complaint and stated that he was holding $3,193.64 escrow balance in trust. McFall knew this statement was false.
Also on November 15, McFall sent a letter to Thangsumphant in which he tendered a check from the account for $2,193.64 and stated that the remaining $1000 was being held in the escrow account. McFall knew this statement was false. On November 19, Thangsumphant sent a letter to McFall objecting to his offer and returning his check.
Around November 26, without the knowledge or authorization of Amtel, McFall issued a fourth check from the account for $2000, which was payable to himself. He again used these funds to satisfy personal expenses. This left a balance of $226.14 in the account.
On January 24, 2002, the local grievance committee issued a subpoena duces tecum that was served on McFall, directing him *306 to provide his trust account records to the Bar's branch auditor. McFall informed the Bar's branch auditor that he did not possess the records, allegedly due to a computer virus that destroyed his trust account records. However, McFall sent the Bar copies of the trust account checks that he issued to himself.
After holding the hearing and considering the parties' stipulation, the referee recommended that McFall be found guilty of violating rules 4-1.15(a) (1992) (a lawyer shall hold in trust, separate from the lawyer's own property, funds and property of clients or third persons), 4-8.4(a) (a lawyer shall not violate the Rules of Professional Conduct), 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 5-1.1(a) (1995) (money entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose), and numerous trust accounting rules, including rules 5-1.1(c) (1995), 5-1.2(b)(2), 5-1.2(b)(3), 5-1.2(b)(4), 5-1.2(b)(5), 5-1.2(b)(6), 5-1.2(b)(7), 5-1.2(c)(1), 5-1.2(c)(2), and 5-1.2(c)(3).
In considering a disciplinary recommendation, the referee found the aggravating factors of (1) dishonest and selfish motive; (2) multiple offenses; and (3) intentionally misleading the Bar about the whereabouts of the funds. In mitigation, the referee found: (1) no prior disciplinary history; (2) McFall was a self-starter (McFall and his wife put him through college and law school, and McFall previously worked for seven years with the Polk County Sheriff's Office without any disciplinary complaints and became a detective sergeant); (3) good reputation; (4) McFall suffers from medical problems including depression (since 1995) and chronic pain (since 1998), and he had significant pain treatments and health problems that affected his ability to perform in a law firm or in a solo practice; (5) his conduct was out of character and was the result of his diminished mental and physical capacities; (6) restitution was made in full; (7) the amounts of money were small in comparison to the total amounts entrusted to him; (8) the thefts were short in duration, isolated in time, and limited to one account; (9) McFall admitted all violations and became cooperative with the Bar; (10) remorse; (11) rehabilitation is probable and, with proper treatment, McFall's mental and physical conditions can be maintained; and (12) McFall is unlikely to commit further offenses.
As to discipline, the referee recommended that McFall be suspended for six months, retroactive to the date of the emergency suspension (April 26, 2002), followed by three years of probation with the following conditions: (1) he must receive psychological/psychiatric counseling and treatment, which includes taking prescribed medication; (2) he shall authorize the treatment provider to make quarterly reports to the Bar on his fitness to practice law; (3) at the Bar's request, he shall submit to an annual evaluation by a treatment provider of the Bar's choice; (4) he shall submit to random audits of his office accounts, trust accounts, and escrow accounts; and (5) he shall attend a debt management course. The referee awarded costs of the proceeding to the Bar, which total $1,108.04.
The Bar petitioned the Court for review of the referee's disciplinary recommendation, arguing that disbarment is the appropriate sanction.

ANALYSIS
As a preliminary matter, neither party contests the referee's findings of fact or recommendations as to guilt, which were based on the parties' stipulation. Therefore, the Court adopts the referee's *307 findings and recommendations, except for the finding that the small amount of the misappropriated funds constituted a mitigating factor.[4]
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because ultimately it is the Court's responsibility to order the appropriate sanction. See Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). In the instant case, the referee did not cite to case law or the Florida Standards for Imposing Lawyer Sanctions in recommending a six-month suspension for McFall's misappropriation of trust funds.
It is well settled that the misuse of funds held in trust is one of the most serious offenses a lawyer can commit and that disbarment is presumed to be the appropriate sanction. Florida Bar v. Travis, 765 So.2d 689, 691 (Fla.2000); see also Florida Bar v. Tillman, 682 So.2d 542 (Fla.1996). However, there are older cases involving attorney misconduct relating to client funds in which the attorneys were disciplined by a six-month suspension instead of disbarment. In such cases, the attorney's misconduct was due to negligence rather than an intentional act to misappropriate funds. See Florida Bar v. Neu, 597 So.2d 266 (Fla.1992) (suspending attorney for six months for negligently commingling personal and trust fund accounts); Florida Bar v. Weiss, 586 So.2d 1051 (Fla.1991) (suspending attorney for six months for gross negligence in failing to properly supervise accountant's work in handling trust accounts). In the instant case, the referee found that McFall admitted that he took the funds to benefit himself and his family and that McFall made repeated unauthorized withdrawals. Further, the parties' stipulated facts indicate that McFall wrote three of the checks after Amtel specifically demanded that McFall forward the entire escrow balance. Therefore, these older cases, which found a six-month suspension appropriate due to negligence, are distinguishable from the instant case. We conclude that the referee's recommended discipline does not have a reasonable basis of support in case law.
The Bar relies on Florida Bar v. Travis, 765 So.2d 689 (Fla.2000), in arguing that disbarment is appropriate for McFall. However, we conclude that Travis is distinguishable. The attorney in Travis was disbarred for intentionally misappropriating clients' funds over several years and making unauthorized payments to himself that totaled $35,850. In comparison, McFall's misconduct occurred during a short period of time. Further, the attorney in Travis did not make any attempts to pay back the trust account. Rather, he purchased a new home worth $210,000 that he placed in his wife's name, and he helped pay for his daughter's trip to Costa Rica, while earning $150,000 in one year. In contrast, McFall made restitution. Further, *308 the attorney in Travis had five mitigating factors, while McFall has eleven. Although we conclude Travis is distinguishable from the instant case, we find the decision whether to disbar McFall is a close one.
Disbarment is usually the appropriate sanction for an attorney's misuse of funds. However, Florida Standard for Imposing Lawyer Sanctions 4.1 states that mitigating circumstances can be taken into account. Similarly, this Court stated in Travis that the presumption of disbarment for misappropriation can be rebutted by mitigating evidence. See Travis, 765 So.2d at 691. In the instant case, the referee recommended a suspension based on numerous mitigating factors. Our review of the record indicates that there is evidentiary support for those findings.[5] For example, the referee emphasized McFall's personal and medical problems. The record indicates that McFall had severe, debilitating physical pain due to a form of neuropathy and that he had operations on his feet. According to testimony, McFall saw podiatrists, a neurologist, a neurosurgeon (who was looking for spinal damage), anesthesiologists (who had attempted epidural nerve blocks in his spine to alleviate the pain), a vascular surgeon, a cardiologist, and other specialists. Further, McFall had a history of clinical depression and was seeing a psychiatrist. Due to the pain and depression, doctors placed McFall on medications such as Oxycontin, Effexor, Prozac, Neurontin, Methadone, and Fentanyl. Sometimes McFall was taking more than one of these medications at the same time, for the two conditions. Testimony in the record indicates that while McFall was taking these medicines, he did not act like his usual self, he was not thinking clearly, and the medication seemed to cloud his judgment.[6] Testimony given at the hearing also indicated that McFall had always been a "by the book" kind of person, so his behavior during the period in question was out of character. This Court will not "excuse an attorney for dipping into his trust funds as a means of solving personal problems," but it will recognize that "mental problems ... may impair judgment so as to diminish culpability." Florida Bar v. Shanzer, 572 So.2d 1382, 1384 (Fla.1991); see also Florida Bar v. Condon, 632 So.2d 70 (Fla.1994). The record and the referee's findings in mitigation regarding McFall's medical and mental health problems, and the impact those conditions had on him, indicate that McFall had diminished culpability. Considering the unique facts of this case and the numerous mitigating factors, we conclude that disbarment is not warranted and that suspension is appropriate.
Next, we consider the appropriate length of the suspension. In Florida Bar v. Tauler, 775 So.2d 944 (Fla.2000), the Court suspended Tauler for three years *309 for misappropriation of client funds. Tauler had issued over $56,600 in checks to herself from her trust account, which she used to satisfy personal and business obligations. However, like McFall, Tauler returned the funds. Also similar to McFall, Tauler suffered from very serious hardships that resulted in "diminished culpability due to the circumstances surrounding [her] misconduct." Id. at 947. The referee in Tauler found the mitigating factors of (1) personal and emotional problems; (2) positive character and reputation; (3) restitution; and (4) remorse.[7] In approving the referee's recommendation in Tauler of a three-year suspension, the Court emphasized that "[t]rust funds are never to be used as a means for solving personal problems," id. at 949, and that "without the unique mitigating circumstances presented in [Tauler's] case ... we would not hesitate to disbar Tauler." Id.
Although we are troubled by and condemn McFall's misconduct, we conclude that a three-year suspension is appropriate. But for the unique facts and mitigating circumstances, which indicate that McFall had impaired judgment due to his medications and mental health, we would disbar McFall.

CONCLUSION
Accordingly, we hereby suspend Mark W. McFall from the practice of law in Florida for three years, effective, nunc pro tunc, April 26, 2002, the date of McFall's emergency suspension. See Florida Bar v. McFall, No. SC02-750 (Fla. April 26, 2002) (unpublished order). In that order, we afforded McFall thirty days to close out his practice and protect the interests of existing clients. Further, we ordered McFall not to accept any new business starting April 26, 2002, the date the order was issued. Accordingly, we find that providing McFall with an additional thirty days is not necessary.
We approve the referee's disciplinary recommendation of probation for three years, including the five conditions specified in the referee's report,[8] if McFall is reinstated to the practice of law in Florida.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Mark W. McFall in the amount of $1,108.04, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., and PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
WELLS, J., dissents with an opinion, in which BELL, J., concurs.
WELLS, J., dissenting.
I dissent as to the three-year suspension. I conclude that the necessary and required discipline is disbarment.
*310 I recognize that McFall has presented a case in which there is mitigation explaining his violation of the Rules of Discipline. However, this mitigation cannot avoid the crucial fact that he intentionally took money for his personal use from funds he held in trust for his client.
I repeat what I stated in my opinion in Florida Bar v. Tauler, 775 So.2d 944, 950 (Fla.2000) (Wells, C.J., dissenting).
I do not diminish the heavy stress and pressure which respondent's personal crisis had upon her and her family. However, lawyers must know and the public must have confidence that lawyers know that funds held by lawyers in trust are as unavailable for personal use as funds which are in a bank in another person's name. Intentionally taking that money for whatever purpose is stealing, for which the consequence is certainno longer having the privilege of being a member of The Florida Bar.
I recognize that such absolutes are often tested by factual circumstances which make this imposition harsh. However, public trust and confidence in lawyers, which is a necessary foundation for public trust and confidence in the judicial system, can stand on nothing less. There simply has to be public assurance that funds entrusted to lawyers will not be stolen by the lawyer, and if that public assurance is breached by a lawyer, that lawyer will not longer be a Florida lawyer.
I would find that McFall's disbarment is required by this Court's decisions in Florida Bar v. Travis, 765 So.2d 689 (Fla.2000), and Florida Bar v. Korones, 752 So.2d 586 (Fla.2000).
BELL, J., concurs.
NOTES
[1] The stipulated facts do not account for the transactions that resulted in the $6,287.39 figure. However, the Bar has not made any allegations of misconduct regarding these earlier transactions.
[2] The parties do not argue that this case involves a fee dispute. Rather, McFall admitted that his actions constitute misappropriation.
[3] Math calculations indicate that this amount should be $1,193.64. However, these are the amounts stipulated to by the parties, which might include interest payments. Further, no one has challenged the amounts.
[4] This Court has reiterated many times that misappropriation is one of the most serious violations an attorney can commit. It is irrelevant whether the misappropriation involved a large or small amount of funds, because it is the act of misappropriation that constitutes the misconduct. The Rules Regulating the Florida Bar do not condition a rule violation for misappropriation based on the amount of the funds involved. See R. Regulating Fla. Bar 4-1.15, 4-8.4, 5-1.1(a). Accordingly, we disapprove the referee's finding of this mitigating factor.
[5] As stated previously, however, we disapprove the referee's finding of one mitigating factor. See supra note 4.
[6] The Bar argues that McFall did not demonstrate a causal connection between his ailments and the theft of the funds. However, in contrast to the Bar's argument, the referee specifically found McFall's mental and physical conditions constituted mitigating factors (i.e., significant pain treatments and health problems affected McFall's ability to perform in a law firm or in a solo practice; McFall's conduct was out of character and was the result of his diminished mental and physical capacities) and took these into account when recommending the disciplinary sanction. Further, the referee recommend that McFall receive psychological/psychiatric counseling and treatment, take any prescribed medications, and submit to an annual evaluation. Our review of the record, discussed above, found evidentiary support for the referee's conclusion that there was a causal link between McFall's ailments and his actions.
[7] The referee in Tauler also found the mitigating factor of full and free disclosure.
[8] We approve the referee's recommendation of the following conditions for McFall's probation: (1) respondent shall receive psychological/psychiatric counseling and treatment, including taking medication as prescribed; (2) respondent shall authorize such treatment provider to report quarterly to The Florida Bar on the respondent's fitness to practice law; (3) respondent shall, at the request of The Florida Bar, and at respondent's expense, submit to an annual evaluation by a treatment provider of The Florida Bar's choice, to ensure the respondent's fitness to practice law; (4) respondent shall submit to random audits of his office accounts, trust accounts, and escrow accounts by The Florida Bar; and (5) respondent shall attend a debt management course within the first year of probation at the direction of The Florida Bar.