959 So.2d 241 (2007)
THE FLORIDA BAR, Complainant,
v.
Elizabeth MARTINEZ-GENOVA, Respondent.
No. SC04-2365.
Supreme Court of Florida.
June 14, 2007.
*243 John F. Harkness, Jr., Executive Director, and Kenneth L. Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL, Barnaby Lee Min, Bar Counsel, The Florida Bar, Miami, FL, for Complainant.
Nancy C. Wear, Coral Gables, FL, and Gary S. Glasser, Miami, FL, for Respondent.

REVISED OPINION
PER CURIAM.
Upon consideration of the Bar's motion for rehearing, we withdraw our previous opinion and issue the following opinion.
We have for review a referee's report recommending that attorney Elizabeth Martinez-Genova be found guilty of professional misconduct and suspended from the practice of law. We have jurisdiction. See art. V, § 15, Fla. Const.
We approve the referee's factual findings with regard to guilt on all rule violations. However, we do not approve the referee's recommended discipline because we find that a three-year suspension is insufficient because of the serious violations that she committed. For the reasons that follow, Elizabeth Martinez-Genova is disbarred from the practice of law in the State of Florida, effective, nunc pro tunc, October 20, 2004, the date on which Martinez-Genova was suspended by order of this Court.

FACTS
On December 16, 2004, The Florida Bar filed a two-count complaint against respondent Elizabeth Martinez-Genova. In count one, the Bar alleged that Martinez-Genova intentionally misappropriated third-party funds and failed to maintain proper trust accounting procedures. In count two, the Bar alleged that Martinez-Genova's arrests for cocaine use and possession were a violation of rule 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects) of the Rules Regulating the Florida Bar. After conducting a hearing, the referee issued a report in which she made the following findings and recommendations.

*244 Count I
Martinez-Genova represented her client Gary Wyckle, President of Charter One Group, Inc. (Charter One), in a series of transactions with Juan Aramendia and Eduardo Solares of Nikita Investment Corporation (Nikita). Charter One and Nikita entered into a conditional loan commitment agreement under which Charter One was to assist Nikita in obtaining a loan for $35 million to fund the acquisition of a pulp plant and saw mill in Guatemala. This conditional loan commitment was signed by Solares and Wyckle. The commitment stated that the borrowers would deliver $60,000 to Charter One's attorney, to be held in trust and credited to loan fees at closing. Martinez-Genova testified that she believed that Wyckle asked her, as his attorney, to hold the funds because doing so would make Wyckle appear "more credible" to his business partners.
Martinez-Genova did not sign the conditional loan commitment. However, Martinez-Genova did approve sending, on her letterhead stationery stating that she was an attorney, two letters, dated February 11, 2004, and February 19, 2004, directing Aramendia and Solares to wire transfer their deposits to her bank account. Both letters stated that the wire transfer funds would be credited to the loan commitment fee stipulated in the loan commitment. On February 12, 2004, Solares wired $8000 to Martinez-Genova's account. On February 19, 2004, Aramendia wired an additional $52,000 to Martinez-Genova's account. Ultimately, Charter One did not obtain financing on behalf of Nikita. Charter One also failed to refund any of the $60,000 deposit.
In response, Nikita retained Richard Brenner, who filed a complaint with The Florida Bar on August 28, 2004, regarding Martinez-Genova's involvement in the failed loan transaction. A Bar staff auditor examined Martinez-Genova's sole bank account for the period of June 21, 2003, to August 23, 2004. The auditor discovered that as of February 12, 2004, Martinez-Genova had a balance of $11.04. Then, on February 13, 2004, Martinez-Genova received a wire transfer in the amount of $8000 from Solares, acting under the name Helicopteros Del Norte. In the following days, Martinez-Genova made a $7700 over-the-counter cash withdrawal and several ATM withdrawals of smaller amounts. As of February 17, 2004, only $18.82 remained in Martinez-Genova's account.
On February 20, 2004, Martinez-Genova received a wire transfer in the amount of $52,000 from Aramendia. During the following week, Martinez-Genova made four over-the-counter cash withdrawals from her account totaling $25,150. Martinez-Genova also authorized three wire transfers to Charter One and its designees totaling $26,103. Finally, Martinez-Genova made a number of debit card purchases and ATM withdraws from her account during that same week. On February 27, 2004, the balance in Martinez-Genova's operating account was $327.50. By March 8, 2004, Martinez-Genova had a balance of negative $26.96.
Martinez-Genova testified that she agreed to act as Wyckle's agent in the Nikita transaction in exchange for a fee of three percent of the $60,000 deposit. She claims to have only retained or spent her $1800 fee and to have given the balance of the cash she withdrew to Wyckle. However, Martinez-Genova did not keep any records of the above transactions or document her fee.
Martinez-Genova's pattern of receiving third-party funds and disbursing them to herself or Wyckle resumed on May 13, 2004. Beginning with a balance of $1, Martinez-Genova received wire transfers totaling $59,800 over a three-month period. *245 From these funds, Martinez-Genova transferred $53,850 to American Escrow Company, LLC,[1] which was owned by Gary Wyckle, withdrew $5811 in cash and used $139 to pay bank charges.
After a hearing, the referee found Martinez-Genova guilty of violating Rule of Professional Conduct 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and Rules Regulating Trust Accounts 5-1.1(a) (Nature of Money or Property Entrusted to Attorney), 5-1.1(b) (Application of Trust Funds or Property to Specific Purpose), 5-1.1(e) (Notice of Receipt of Trust Funds; Delivery; Accounting), 5-1.1(f) (Disputed Ownership of Trust Funds), 5-1.2(b) (Minimum Trust Accounting Records), 5-1.2(c) (Minimum Trust Accounting Procedures), and 5-1.2(d) (Record Retention).
Specifically, the referee found that the deposit sent to Martinez-Genova by Nikita was to be held in trust according to the loan commitment and that despite this expectation of trust, Martinez-Genova "had a pattern of receiving third-party funds and simultaneously withdrawing and disbursing from those funds." The referee found that "third-party funds were not being used for their intended purpose" and that Martinez-Genova "willfully ignored her responsibilities as an attorney during the period in which she misappropriated money from third-parties." Finally, the referee found that Martinez-Genova "knew that what she was doing was wrong" and noted that neither Martinez-Genova nor Wyckle had made restitution.

Count II
The Bar's complaint also addressed Martinez-Genova's history of drug use and repeated arrests for drug possession. Martinez-Genova was arrested three times for possession of cocaine between June 20, 2002, and June 4, 2004. After the last arrest, Martinez-Genova was incarcerated and remained in custody until she was transferred to St. Luke's Addiction Recovery Center, an in-patient drug treatment facility, in July 2004. She remained in St. Luke's until she was successfully discharged in September 2004. The referee found that Martinez-Genova's drug use and possession violated Rule of Professional Conduct 4-8.4(b) (A lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects).
Applying the Florida Standards for Imposing Lawyer Sanctions, the referee found four aggravating factors: (1) Martinez-Genova acted from a selfish motivethe support of her drug habit; (2) she displayed a pattern of misconduct over a substantial period of time; (3) she was involved in a series of improper transactions, amounting to multiple offenses; and (4) she caused actual harm to third parties without payment of restitution to them.
The referee found nine mitigating factors: (1) Martinez-Genova had personal and emotional problems including a cocaine addiction and clinical depression; (2) she cooperated with the Bar during its investigation; (3) she was inexperienced in the practice of law; (4) she made a good-faith effort to rectify the misconduct set out in Count II by voluntarily entering into a three-year contract with Florida Lawyers Assistance, Inc. (FLA); (5) she presented evidence of good character; (6) she had a mental disability (cocaine addiction, clinical depression); (7) she expressed *246 remorse for her misconduct; (8) she entered into interim rehabilitation programs (three-year contract with FLA, outpatient therapy, Narcotics Anonymous); and (9) she had imposed upon her other penalties or sanctions (Martinez-Genova must attend Miami Behavioral meetings, submit to semiweekly drug tests, and attend Alcoholics Anonymous and Narcotics Anonymous meetings for a period of one year by court order; Martinez-Genova suffered negative publicity in The Miami Herald; Martinez-Genova lost visitation with her son in part due to her drug use).
Based on these factors and Florida case law, the referee recommended that Martinez-Genova be sanctioned by a three-year suspension, retroactive to the date of her emergency suspension, followed by a two-year period of probation if reinstated. During this probationary period, Martinez-Genova would be required to participate in FLA, submit to mandatory semimonthly urine tests, participate in outpatient therapy, and enroll in the Law Office Management Assistance Service (LOMAS) program regarding the operation of trust accounts. Martinez-Genova's trust transactions would be monitored by a suitable mentor during the probationary period. The referee also recommended that the Bar's costs be imposed against Martinez-Genova.
The Bar filed a petition for review with this Court, seeking disbarment rather than the recommended discipline. Martinez-Genova argues that suspension is appropriate given the referee's findings of mitigating factors.

ANALYSIS
Neither party challenges the findings of fact or recommendations as to guilt. Accordingly, we approve without further discussion the referee's recommendation that Martinez-Genova be found guilty of violating the above rules. As to the recommended discipline, the Bar argues that case law requires this Court to reject the referee's recommendation of discipline. We agree.
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because ultimately it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Lawless, 640 So.2d 1098, 1100 (Fla.1994); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Fla. Bar v. McFall, 863 So.2d 303, 307 (Fla.2003).
In this case, existing law indicates that the referee's recommendation of suspension is not sufficient discipline in accord with our case law in respect to a lawyer's misuse of client funds. Disbarment is the presumptive discipline for misuse of client funds because it is unquestionably one of the most serious offenses a lawyer can commit. Fla. Bar v. Gross, 896 So.2d 742 (Fla.2005); Fla. Bar v. Barley, 831 So.2d 163 (Fla.2002); Fla. Bar v. Tillman, 682 So.2d 542 (Fla.1996); Fla. Bar v. Weinstein, 635 So.2d 21 (Fla.1994); Fla. Bar v. Shanzer, 572 So.2d 1382 (Fla.1991). This presumption of disbarment is "exceptionally weighty when the attorney's misuse is intentional rather than a result of neglect or inadvertence." Barley, 831 So.2d at 171.
Martinez-Genova's misuse of third-party funds was intentional. Martinez-Genova's letters to Aramendia and Solares indicated that the wire-transferred funds, totaling $60,000, would be credited to the loan commitment fee. Aramendia and Solares had *247 a right to rely upon her not misusing the funds since the funds were sent to Martinez-Genova, who had sent them letters as an attorney. The referee found the commitment fee was to be held in trust. Yet, bank records indicate that on February 23, 2004, Martinez-Genova completed a withdrawal ticket for a $4500 cashier's check and another for $8000 in cash. A few days later, on February 27, 2004, Martinez-Genova again completed two withdrawal tickets, one for a $6600 cashier's check and another for $6050 in cash. During this period, Martinez-Genova also initiated three separate wire transfers, totaling $26,103, to Charter One and its creditors. Martinez-Genova could not have inadvertently walked into her bank branch and unintentionally made these withdrawals from her account.
This Court agrees with the referee's finding that Martinez-Genova "willfully ignored her responsibilities as an attorney during the period in which she misappropriated money from third-parties." As a result, Martinez-Genova's misconduct is not analogous to negligent misappropriation cases such as Florida Bar v. Mason, 826 So.2d 985 (Fla.2002), and Florida Bar v. Wolf, 930 So.2d 574 (Fla.2006), where this Court has found suspension to be an adequate sanction.
In both Mason and Wolf the Court found that the attorneys' misappropriations were due to mistakes in accounting practices and that there was no evidence that any clients ultimately sustained losses. Mason, 826 So.2d at 988; Wolf, 930 So.2d at 578. In contrast, Martinez-Genova kept no bank account records at all and intentionally withdrew funds that were to be held in trust. Moreover, Martinez-Genova has not made restitution to any of the injured parties.
The Florida Standards for Imposing Lawyer Sanctions confirms that disbarment is the appropriate sanction in the present disciplinary action. Section 7.1 states:
Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
The referee found that Martinez-Genova knowingly caused injury to members of the public for the benefit of herself and her client Wyckle. Thus, disbarment is appropriate under the Florida Standards for Imposing Lawyer Sanctions.
Martinez-Genova argues that the circumstances surrounding her misappropriation mitigate against disbarment. This Court has considered whether an attorney's personal and emotional problems, such as drug addiction, outweigh the seriousness of the attorney's misconduct when determining what discipline to impose. However, the Court finds mitigating factors to overcome the presumption of disbarment for misappropriation only in exceptional and unusual circumstances because this Court refuses to "excuse an attorney for dipping into his trust funds as a means of solving personal problems." Fla. Bar v. Shanzer, 572 So.2d at 1384.
For example, in Florida Bar v. Shuminer, 567 So.2d 430 (Fla.1990), the Court disbarred an attorney who misappropriated client funds despite finding the mitigating factors present in the current action, personal and emotional problems, cooperation with the Bar, inexperience in the practice of law, good reputation, mental impairment due to addiction, successful rehabilitation efforts, and remorse, plus the additional factors that Shuminer had no prior disciplinary history and he had made a good-faith effort at restitution. Notwithstanding *248 this long list of mitigating factors, the Court found that Shuminer "failed to establish that his addictions rose to a sufficient level of impairment to outweigh the seriousness of his offenses." Id. at 432.
Similarly, in Florida Bar v. Clement, 662 So.2d 690 (Fla.1995), the Court disbarred an attorney for intentional misappropriation where the attorney was diagnosed with bipolar disorder. The Court held that Clement's psychological disorder did not outweigh the seriousness of his misconduct because the referee found that Clement could distinguish right from wrong at the time of his misconduct. Id. at 699.
Martinez-Genova makes no more showing of impairment than Shuminer or Clement. Just as Shuminer "continued to work effectively" during his struggle with alcoholism, the referee found that Martinez-Genova passed the Florida Bar Examination and handled a complex litigation case despite daily cocaine use. Shuminer, 567 So.2d at 432. And the referee found that, like Clement, Martinez-Genova was able to distinguish right from wrong at the time of the misappropriation despite the effects of her drug addiction and depression.
Furthermore, Martinez-Genova's situation is distinguishable from a case where this Court found an attorney's personal problems to outweigh the seriousness of her misconduct. In Florida Bar v. Tauler, 775 So.2d 944, 947 (Fla.2000), the Court approved the referee's recommendation of suspension and distinguished Shuminer and Shanzer after the referee found that Tauler was "less culpable" because her misconduct was the product of personal and emotional distress. Specifically, the referee found that Tauler's husband was the "prime mover" behind her wrongdoings. Id. Yet, in Tauler, we expressly cautioned that "without the unique mitigating circumstances presented in the instant case and Tauler's clear commitment to providing legal assistance to those in need, we would not hesitate to disbar Tauler." Id. at 949.
Martinez-Genova's case does not present the same unique mitigating circumstances as Tauler. Most notably, while Martinez-Genova has made no attempt at restitution, Tauler made timely and good-faith restitution. Also, while Martinez-Genova has provided some pro bono assistance, Tauler dedicated hundreds of hours to assisting the poor prior to her suspension. Finally, Martinez-Genova has some history of misconduct, whereas the Court did not note any previous discipline in Tauler.
Martinez-Genova's struggle with drug addiction and clinical depression and her admirable progress towards rehabilitation are relevant to this Court's determination of discipline. However, this is not a case where an attorney's substance abuse and personal turmoil cast doubt on the knowing, intentional nature of his or her misconduct. Upon review of all of the facts, prior case law, and the Florida Standards for Imposing Lawyer Sanctions, we find disbarment to be the appropriate level of discipline.
Finally, the referee recommended that costs in the amount of $8,235.52 be charged to Martinez-Genova. The Bar has requested that the costs incurred in seeking appellate review of the referee's erroneous recommendation of discipline also be charged to the respondent. This Court has final discretionary authority to award costs. Fla. Bar v. Lechtner, 666 So.2d 892 (Fla.1996); Fla. Bar v. Bosse, 609 So.2d 1320 (Fla.1992). In Lechtner, this Court explained:
[G]enerally, when there is a finding that an attorney has been found guilty of violating a Rule Regulating the Florida *249 Bar, the Bar should be awarded its costs. Assessment of costs against a respondent who has violated the Rules of Discipline is a policy decision. The choice is between imposing the costs of discipline on those who have violated our Rules of Professional Conduct or on the membership of the Bar who have not. In these situations, it is only fair to tax those costs against the member who has violated the rules.
666 So.2d at 894 (citations omitted). In the instant case, we agree that the Bar's appellate costs were reasonable and necessary to correct the referee's erroneous recommendation of discipline for such serious misconduct. We further agree that these costs should be borne by the respondent as a matter of policy.

CONCLUSION
Based on the above, we approve the referee's findings of fact and recommendations as to guilt but reject the recommended discipline and instead order disbarment. Accordingly, Elizabeth Martinez-Genova is hereby disbarred for a period of five years, effective nunc pro tunc, October 20, 2004, the effective date of the emergency suspension in Florida Bar v. Martinez-Genova, 888 So.2d 19 (Fla.2004) (table). Martinez-Genova may petition the Florida Board of Bar Examiners for readmission five years from the date of the suspension. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Elizabeth Martinez-Genova in the amount of $12,651.61, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which CANTERO and BELL, JJ., concur.
WELLS, J., concurring in part and dissenting in part.
I concur in the majority's decision to disbar attorney Elizabeth Martinez-Genova because of the serious violations she committed. However, I dissent from the majority's decision to grant rehearing on the issue of costs and to award the Bar over $4000 in appellate costs.
As the majority correctly notes, generally, the Bar should be awarded its costs as a matter of policy where an attorney is found guilty of violating a Rule Regulating the Florida Bar. Majority op. at 248-49 (citing Fla. Bar v. Lechtner, 666 So.2d 892 (Fla.1996)). However, no authority dictates that a respondent must always pay the Bar's disciplinary costs. To the contrary, rule 3-7.6(q)(3) of the Rules of Regulating the Florida Bar provides that when the Bar is successful, in whole or in part, in a disciplinary proceeding, the referee may assess the Bar's costs against the respondent unless it is shown that the costs were unnecessary, excessive, or improperly authenticated. This Court has repeatedly held that we have final discretionary authority to award costs and that we may consider whether an expense is reasonable and award or refuse to award that cost as sound discretion dictates. See, e.g., Fla. Bar v. Bosse, 609 So.2d 1320 (Fla.1992); Fla. Bar v. Davis, 419 So.2d 325 (Fla.1982).
While I agree that the referee erred in not recommending disbarment in this case, I nevertheless believe that the Court should exercise its discretion to not impose the Bar's appellate costs on Martinez-Genova due to the unique circumstances surrounding this appeal. The referee found as mitigating factors that *250 Martinez-Genova cooperated with the Bar in these proceedings and that she was genuinely remorseful for her actions. Martinez-Genova stipulated to the factual allegations against her and admitted that she violated rule 4-8.4(b). She accepted the referee's recommendations of guilt and discipline rather than petitioning this Court for review of the referee's report. After the Bar petitioned for review, she still did not challenge the referee's findings of guilt or recommended discipline. At oral argument, Martinez-Genova's counsel, appearing pro bono on her behalf, attempted to use that opportunity to argue regarding the Bar's amended affidavit of costs before being told by this Court to focus on preventing her client from being disbarred.
Given Martinez-Genova's efforts to minimize the overall cost of these proceedings, I would exercise our discretion to not tax the Bar's significant appellate costs to her. Martinez-Genova clearly brought most of the expense of this disciplinary proceeding upon herself by violating the Rules Regulating the Florida Bar. However, it is not at all clear, in my opinion, that Martinez-Genova caused the Bar's appellate costs. I would therefore approve the referee's recommendation that judgment be entered for the Bar in the amount of $8,235.52.
Moreover, I feel that it is inappropriate for the Court to grant rehearing in this case where the issue of the Bar's appellate costs was explicitly and fully considered prior to the Bar's motion for rehearing.
CANTERO and BELL, JJ., concur.
NOTES
[1] Martinez-Genova prepared American Escrow Company's articles of incorporation and signed as its registered agent.